DEEMER STEEL CASTING COMPANY, Employer, d. b. a., vs. MIKE FRANK, Claimant, p. b. r.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT; POSTPONEMENT OF COMMUTATION.

Where, at the time of hearing before the Industrial Accident Board, the injuries of the claimant may have resulted in total disability which may continue for an indefinite period, although it may be quite obvious that such disability will ultimately be followed by partial disability, the case naturally falls under Workmen's Compensation Law 1917, § 103, *subsec.* (*a*), and in such case the board will deny or postpone any application for commutation of weekly payments awarded or agreed upon.

2. MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT; CLASSIFICATION OF INJURY TO FINGERS.

Where a servant had three fingers and part of the thumb of the right hand cut off, and the physician testified that he was temporarily totally disabled, but that the hand would be 25 per cent. efficient when cured, compensation should be adjudged under *Workmen's Compensation Law* 1917, § 103, *subsec.* (*a*), and not under *subsection* (*c*).

(*December* 17, 1919.)

BOYCE and RICE, J. J., sitting.

*Herbert H. Ward* (of *Ward, Gray and Neary*) for appellant.

*William H. Cooper* for appellee.

Superior Court for New Castle County, November Term, 1919.

Proceeding before the Industrial Accident Board under The Delaware Workmen's Compensation Law by Mike Frank, Claimant, against the Deemer Steel Casting Company, the Employer, to obtain commutation of compensation for injuries. The Board awarded commutation of weekly payments agreed upon by the parties and the employer appeals. Award reversed

APPEAL No. 140, November Term, 1919, from award of Industrial Accident Board of the state of Delaware, New Castle County, Claim No. 9131 (November 5, 1919).

In support of the contention of the appellant on the law there was cited: *Lebanenski v. Foerderer*, 2 *Pa. Dept. Rep.* 2297; *Lemey v. Porter*, 1 *Pa. Comp. Bd. Dec.* 42; *Grammici v. Zinn*, 219 *N. Y.* 322, 114 *N. E.* 379; *Kanzar v. Acorn Mfg. Co.*, 219 *N. Y.* 326, 114

N. E. 398; *Adams v. Boorum & Please*, 179 *App. Div.* 412, 166 *N. Y. Supp.* 97; *Carkey v. Island Paper Co.*, 177 *App. Div.* 73, 163 *N. Y. Supp.* 710; *Boscarino v. Carfagno & Dragonette*, 220 *N. Y.* 323, 115 *N. E.* 710, *Ann. Cas.* 1918A, 530; *Frings v. Pierce-Arrow Motor Car Co.*, 182 *App. Div.* 445, 169 *N. Y. Supp.* 309; *Barringer v. Clark*, 184 *App. Div.* 695, 172 *N. Y. Supp.* 398; *Sheanon v. P. M. L. Ins. Co.*, 77 *Wis.* 618, 46 *N. W.* 799, 9 *L. R. A.* 685, 20 *Am. St. Rep.* 151. •

For the appellant *Lemieux's Case*, 233 *Mass.* 346, 111 *N. E.* 782, was relied on.

BOYCE, J., delivering the opinion:

At the plant of the appellants on September 9, 1919, the appellee, while in the act of going around the front of a machine, slipped and fell, and his hand coming between the scraper and side door, he had three fingers and part of the thumb of his right hand cut off. Subsequently, during the same month, the appellant and the appellee reached an agreement in regard to compensation in accordance with *section* 107, *chapter* 233 *vol.* 29, *Laws of Delaware* (*Code*, § 3193n) and they filed a memorandum of the agreement, signed by them, with the Industrial Accident Board, which, omitting the formal parts, is in words and figures as follows:

"That the said Mike Frank shall receive compensation at the rate of $10.50 per week, based on an average weekly wage of $21.00 at the time of said injury and that said compensation shall be payable from and including the ninth day of Sept., 1919. until terminated in accordance with the provisions of The Delaware Workmen's Compensation Law of 1917, provided, however, that if the disability continues for four weeks after the date of the injury, or longer, such compensation shall be computed from the date of such injury.
"Dated this twenty-fourth day of Sept., 1919."

On the sixth day of October, 1919, the appellee preferred a petition to the Industrial Accident Board wherein he represented that he was entitled to compensation as set forth in said agreement, and that he was desirous of having the compensation agreed upon commuted to its then present value. The Secretary of the Board served notice upon the parties of the time and place of hearing the application. After a hearing, on the fifteenth day of October, 1919, a majority of the Board, did, on the fifth day of November

following, after taking into consideration the weekly payments made for eight weeks to the third day of November, award and adjudge that the Deemer Steel Casting Company pay to Mike Frank compensation of ten dollars and fifty cents per week for 150 weeks, making a total commutation of one thousand five hundred and seventy-five dollars. From this award the Deemer Steel Casting Company has appealed to this court. At the time of the hearing before the Board, it was admitted in connection with the consideration of the question of the commutation of compensation that the claimant was forty-three years of age; that prior to and since the accident he was and is in good health, with the exception of his injured, hand; that since the accident he has been unable to perform any manual labor; that he is desirous of returning to Italy, which is his native country, in case commutation is allowed, for the reason that all of his relatives live in Italy; that he and a brother own real estate in Italy on which he desires to locate, and use his money; and that in his present condition it would be advantageous for him to live there. With these admissions and the weekly payments agreed upon, it is conceded that the commutation and the amount thereof were properly awarded, provided the case of the claimant was properly classified under *subsection (c) section* 103 as amended (*Code,* § 3193j) *chapter* 203, *vol.* 30, *Laws of Delaware,* 535. And it was further agreed that there were but two questions for the consideration and determination of the Board, viz.:

1. "Did Mike Frank suffer the loss of the hand or the permanent loss of the use thereof such as to make him compensible under the provisions of subsection (c) of section 103 of The Delaware Workmen's Compensation Law of 1917, or is he compensible under subsection (a) or subsection (b) of said section 103?"

2. "In case he is compensible under any of the three subsections of said section 103 should the compensation hereafter payable be commuted to a lump payment under the provisions of section 113 of said law?"

Said *section* 103, as amended, provides that—

"The following schedule of compensation is hereby established for injuries resulting in total disability:—

"(a) For the first four hundred and seventy-five weeks of total disability, fifty per centum of the wages of the injured employe as defined by this act as amended; but the compensation shall not be more than fifteen dollars per week nor less than five dollars per week, and shall not exceed in the aggregate

the sum of four thousand dollars; provided, that if at the time of injury, the employee receives wages of less than five dollars per week, then he shall receive the full amount of such wages per week, as compensation. Nothing in this paragraph (a)shall require the payment of compensation after disability shall cease. Should partial disability be followed by total disability, the period of four hundred and seventy-five weeks mentioned in this paragraph (a) of this section shall be reduced by the number of weeks during which compensation was paid for such partial disability.

"(b)  For disability for work partial in character (except the particular cases mentioned in the next succeeding subsection (c) of this section), fifty per centum of the difference between the wages received by the injured employe before the injury and the earning power of the employe thereafter, but such compensation shall not be more than fifteen dollars per week. This compensation shall be paid during the period of such partial disability for work; not, however, beyond two hundred and eighty-five weeks. Should total disability for work be followed by partial disability for work, the period of two hundred and eighty-five weeks mentioned in this subsection (b) shall be reduced by the number of weeks during which compensation was paid for such total diasbility.

"(c)  For all permanent injuries of the following classes, the compensation, regardless of the earning power of such injured employe after such injury, shall be exclusively as follows:

"For the loss of a hand, fifty per centum of wages during one hundred and fifty-eight weeks.  *  *  *

"Amputation between the elbow and the wrist shall be considered as the equivalent of the loss of a hand.  *  *  *  Permanent loss of the use of a hand  *  *  *  shall be considered as the equivalent of the loss of such hand.  *  *  *"

The Board heard the testimony of two physicians. Dr. Beeler, who performed the only operation on the hand, testified in substance that the index, middle and ring fingers were amputated back to the metacarpal bones, and that the first joint of the thumb was also amputated; that the claimant has lost approximately three-fourths of the use of his hand and retains about twenty-five per cent. of its use; that in due course of nature the hand will recover efficiency to at least the extent of twenty-five per cent. of its use, and that the claimant will be able to follow the business in which he was engaged—that of a sand shoveller, so soon as his hand is healed. Dr. Cleaver, who examined the hand for the purpose of forming his opinion, testified, in substance, that the claimant had lost at least seventy-five per cent. of the use of his hand, but that about twenty-five per cent. of the use thereof was left.

The question presented to the court is, under what classification of *section* 103 of the statute should the compensation of the claimant be adjudged? The majority of the Board found that the

claimant was entitled to the weekly compensation agreed upon un-
der *subsection* (*c*) of said section, which in this case would have
been the same under *subsection* (*a*) of said section, and also found
that he was entitled to have the same commuted at its then pres-
ent value, under *section* 113 (*Code*, § 3193t), 29 *Laws of Delaware*,
776. If the Board had found that the claimant was entitled to the
agreed compensation under *subsection* (*a*) of said *section* 103, they
would probably have denied, or, at least postponed any commuta-
tion of the weekly payments of the compensation agreed upon, for
under *section* 113 of the statute, 29 *Laws of Delaware*, 776, it is pro-
vided that—

"The compensation contemplated by this article may be commuted by
said Industrial Accident Board at its present value when discounted at five
per cent. interest, with annual rests, disregarding (except in commuting pay-
ments due under subsection (a) 3193j, section 103 of this article) the proba-
bility of the beneficiary's death, upon application of either party, with due
notice.   *   *   *"

[1]    The exception in respect to commuting weekly payments
in accident cases, which under the statute should be classified un-
der *subsection* (*a*) of *section* 103 is a natural one, because at the time
of the hearing and classification the injuries of a claimant may have
resulted in total disability which may continue for an indefinite
period, although it may be quite obvious that such disability will
ultimately be followed by partial disability. Under such circum-
stances the case would naturally first fall under *subsection* (*a*) of
*section* 103, and the Board would deny or postpone any applica-
tion for commutation of weekly payments awarded or agreed upon
until it should appear whether the injured employe will continue
under total disability, or his condition will be followed by that of
partial disability, when, in the latter event, his compensation
might be classified under *subsection* (*b*) of said section; for by *section*
109 of the statute, 29 *Laws of Delaware*, 774, it is provided that—

"On the application of any party in interest on the ground that the in-
capacity of the injured employe has subsequently terminated, increased, dimin-
ished or recurred, or that the status of the dependent has changed, the Board
may at any time, but not oftener than once in six months, review any agree-
ment or award, and on such review may make an award ending, diminishing,
increasing or renewing the compensation previously agreed upon or awarded.
*   *   *"

It is admitted that the appellee as a result of his injuries, is, for the time being, under total disability for work, and his earning power temporarily, at least, has been destroyed. Also, that his case is a meritorious one, entitling him to the compensation agreed upon. The testimony of the two physicians is undisputed that the injured hand will recover efficiency to at least the extent of twenty-five per cent. of its use. In the light of the admissions and the testimony of the physicians the question is, in what classification under said *section* 103 does the injury to and the present resultant disability of the appellee fall? For injuries resulting in total disability, or should partial disability be followed by total disability, the classification clearly falls under *subsection* (*a*) of said section. For disability for work partial in character (except the particular cases mentioned in *subsection* (*c*) of said section) the classification falls under *subsection* (*b*) of said section. For all permanent injuries of the particular classes, specified in *subsection* (*c*), regardless of the earning power of the injured employe after such injury, the classification falls under *subsection* (*c*). One of the classes specified under *subsection* (*c*) is "for the loss of the hand" or permanent loss of the use of the hand," which latter condition "shall be considered as the equivalent of the loss of such hand." The character of the injury to appellee's hand has already been described. His hand is badly injured, it is true, but the testimony is that it will ultimately have an efficiency equal to twenty-five per cent. If that be so, there will not be a permanent loss of the use of the hand. Subsection (*c*) makes no provision for such a situation.

[2] The injury of the appellee should not, under the facts of this case, be classified under *subsection* (*c*) of *section* 103, but under *subsection* (*a*), until, at least, the present total disability of the appellee for work shall become partial. The award of the Board in classifying the appellee's injuries and in commuting the weekly payments agreed upon, as falling under *subsection* (*c*) of said section, should be and it is reversed.

The costs on this appeal are taxed against the appellant.